Julie Pollock, CSB #346081
Email: jpollock@bm.net
BERGER MONTAGUE PC
505 Montgomery Street Suite 625
San Francisco, California 94111
Telephone: (800) 424-6690

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY JONES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BLOCK, INC., f/k/a SQUARE, INC. and SUTTON BANK,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### I.　　INTRODUCTION

1. Plaintiff Jerry Jones is a victim of fraud.

2. The perpetrators, who are unknown to Plaintiff, fraudulently misrepresented themselves online and by telephone in a successful effort to obtain access to Plaintiff's Cash App account, draining approximately $11,000 from that account.

3. Plaintiff disputed the charges with Defendant Block, Inc. f/k/a Square, Inc. and with Defendant Sutton Bank to no avail.

4. Defendants' error resolution procedures violate the dispute process provisions set forth in the Electronic Funds Transfer Act ("EFTA") in a variety of ways.

COMPLAINT - 1

5. First, Defendants flagrantly violate their obligation to reimburse accountholders for unauthorized charges.

6. Second, Defendants unlawfully require a host of information to be provided as a condition precedent of opening or investigating a dispute or resolving a dispute in a consumer's favor. The EFTA requires that a bona fide investigation be conducted once a bare minimum of information is provided by the consumer.

7. Third, Defendants' error resolution process violates the EFTA by explicitly placing the burden of proving the unauthorized transfer on the consumer (and denying disputes on grounds that the consumer has not met his or her burden of proving that the transaction was unauthorized). The EFTA requires the opposite, providing that Defendants are liable for allegedly unauthorized disputes where Defendants cannot show that the transaction was in fact authorized. Indeed, pursuant to the EFTA, consumers are protected from liability where the consumer provided an access device to a third party as the result of fraud. Moreover, a financial institution is barred under the EFTA from holding a consumer liable for unauthorized use for any reason (including alleged accountholder negligence) that is not specifically set forth in the statute.

8. Fourth, Defendants' error resolution process also violates the EFTA because Defendants deny claims without providing any explanation or providing to the consumer the documents Defendants reviewed during the investigation. Both an explanation of the denial and a notice of the right to request these materials are required under the statute.

9. Plaintiff brings claims against Defendants for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* and the Cal. Bus. & Prof. Code § 17200 *et seq.*

## II.    PARTIES

10. Plaintiff Jerry Jones is a natural person and citizen of Michigan, residing in Portage, Michigan.

11. Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). The accounts at issue were used for personal, family, or household purposes.

COMPLAINT - 2

12. Defendant Block, Inc. is an American financial services merchant services aggregator and mobile payment company headquartered in San Francisco, California.

13. Defendant Block, Inc. is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9) in its own right, and as the agent of Sutton Bank.

14. Defendant Block, Inc. is also a provider of electronic fund transfer services. *See* 12 C.F.R. § 1005.14(a).

15. Defendant Sutton Bank is a state-chartered banking association and is chartered and located in Ohio.

16. Defendant Sutton Bank is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

### III. JURISDICTION AND VENUE

17. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. Jurisdiction over Plaintiff's claim for declaratory relief is conferred on this Court by 28 U.S.C. § 2201.

18. Venue is proper in this district because Defendant Block, Inc.'s headquarters are located in this district and a substantial part of the events and occurrences underlying this litigation occurred within this district.

### IV. FACTS

19. Cash App is a popular mobile payment software application offered by Defendant Block, Inc. that facilitates sending and receiving money.

20. On information and belief, Defendant Sutton Bank holds the accounts of Cash App's users.

21. On information and belief, at all times material herein, Defendants operated as a common enterprise while engaging in unlawful conduct, including the violations of law described herein.

COMPLAINT - 3

22. In light of the foregoing, Defendants are jointly and severally liable for the acts or practices alleged herein.

23. As Defendants are well aware, fraudulent scams in which criminals pose as legitimate sellers and/or Cash App representatives are extraordinarily common on Cash App. *See, e.g.*, https://www.suttonbank.com/services-tools/tools/prepaid-card-support.html; https://www.nytimes.com/2020/10/11/technology/fraud-payment-apps.html; https://myfox8.com/news/cash-app-scam-could-wipe-out-your-bank-account/; https://www.consumer.ftc.gov/articles/mobile-payment-apps-how-avoid-scam-when-you-use-one; https://www.azfamily.com/news/investigations/3_on_your_side/cash-app-scam-leaves-valley-woman-homeless/article_7d9611d4-0983-11eb-bb6a-e372e209486e.html.

24. Plaintiff was the victim of just such a Cash App scam.

25. On February 27, 2022, Plaintiff searched on Google for a Cash App customer service number to obtain assistance in increasing his spending limit from his Cash App account.

26. Plaintiff called the number he located and he received a voicemail.

27. The pre-recorded message on the voicemail directed Plaintiff to leave a message and advised him that a Cash App representative would call him back.

28. Shortly after leaving the message, Plaintiff received a call back from an individual purporting to be a Cash App representative.

29. Upon information and belief, the purported Cash App representative was an individual engaged in fraud (the "Fraudster").

30. The Fraudster asked Plaintiff to confirm his phone number, CashTag, and date of birth.

31. The Fraudster advised Plaintiff that he could assist him in increasing his spending limit from $1,000 to $7,500.

32. During the call with the Fraudster, Plaintiff started receiving notifications regarding his Cash App account.

COMPLAINT - 4

33. Shortly thereafter, Plaintiff lost access to his Cash App account and several unauthorized transactions began to appear in his account.

34. The number Plaintiff called turned out to be a fraudulent Cash App support line set up to deceive users and obtain their Cash App account information.

35. During the call, someone unknown to Plaintiff made multiple withdrawals from his account and appeared to purchase Bitcoin in the amount of approximately $11,000.

36. Plaintiff disputed the transactions with Defendants immediately, that same day, by initiating a complaint through Cash App.

37. Defendants sent a form, boilerplate response, which was a standardized communication routinely used by Defendants when dealing with consumer disputes.

38. Defendants stated that "[t]o begin our investigation, please provide complete answers" and that Defendant "cannot begin an investigation without the required information."

39. Plaintiff immediately provided the requested information.

40. On March 6, 2022, Defendants provided a boilerplate response that the "team reviewed your account and determined we do not have enough evidence to file an 'unauthorized activity' claim on your behalf."

41. Plaintiff requested multiple times that Defendants open an investigation and he also repeatedly requested account statements so that he could file a police report.

42. On March 9, 2022, Defendants sent another boilerplate response stating "we have determined that the transaction(s) in question was authorized, and as a result, have denied your claim. This concludes our investigation into this claim."

43. Defendants refused to accept the claim of unauthorized transactions from Plaintiff.

44. Defendants' form denial failed to provide a legitimate reason for denying the dispute and does not provide notice of Plaintiff's right to an investigation, investigatory materials, and the results of the investigation.

COMPLAINT - 5

45. Defendants have thus refused to refund Plaintiff the approximately $11,000 that was drained from his account as a result of fraud.

46. Plaintiff retained counsel and submitted a demand for arbitration to the American Arbitration Association ("AAA") in light of a February 2022 ruling from the Eastern District of New York compelling four similarly situated plaintiffs to arbitrate their claims against Defendants. *See Thorne v. Square, Inc.*, No. 1:20-cv-05119-NGG-TAM, ECF No. 40 (E.D.N.Y. Feb. 23, 2022).

47. But Defendants failed to timely pay required arbitration fees and costs to the AAA for Plaintiff's case pursuant to Cal Code Civ. Proc. § 1281.98(a)(1). AAA closed the arbitration for non-payment and Plaintiff elected to withdraw his claims from arbitration and file them in this Court pursuant to Cal. Code Civ. Proc. § 1281.98(b)(1).

### V.  FIRST CLAIM FOR RELIEF
(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*)

48. Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporate them with the same force and effect as if set forth specifically herein.

49. The EFTA places sharp limitations on consumer liability for unauthorized transactions.

50. Because Plaintiff did not give actual authority to the Fraudster to initiate the transfers, the transactions initiated by the Fraudster constituted unauthorized electronic fund transfers under § 1693a(12). See, *e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.") (hereafter, the "Fraud Exception").

51. Such transactions do not qualify for the exception under § 1693a(12)(A) because Plaintiff did not "furnish" the fraudsters with the codes; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by people who obtained the codes from Plaintiff through

COMPLAINT - 6

fraud and are therefore unauthorized electronic fund transfers. *See, e.g.*, Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

52. Moreover, "[I]f the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12 CFR Sec. 1005.6 ("Liability of consumer for unauthorized transfers"); *see also* 15 U.S.C. § 1693g ("Consumer liability").

53. Defendants violated the EFTA by holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth in 15 U.S.C. § 1693g(a).

54. Pursuant to the EFTA, 15 U.S.C. § 1693f(a), Defendants must investigate an unauthorized transaction once the consumer provides a minimum of information.

55. The statute provides in relevant part that:

> [O]nce the consumer provides oral or written notice in which the consumer --
>
> (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> (2) indicates the consumer's belief that the documentation, or, . . . the consumer's account, contains an error and the amount of such error; and
> (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,
> the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days.
> Thus, once the account holder provides (1) the name and account number of the consumer; (2) indicates a belief that there is an error and (3) sets forth the reasons for the belief that there is an error, Defendants must ("shall") investigate.

15 U.S.C. § 1693f (Error Resolution).

56. The EFTA, Section 1693(f) defines "errors" broadly:

> (f) ACTS CONSTITUTING ERROR.--For the purpose of this section, an error consists of--

COMPLAINT - 7

(1) an unauthorized electronic fund transfer;
(2) an incorrect electronic fund transfer from or to the consumer's account;
(3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;
(4) a computational error by the financial institution;
(5) the consumer's receipt of an incorrect amount of money from an electronic terminal;
(6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this title; or
(7) any other error described in regulations of the Bureau.

*See also*, Regulation E, 12 C.F.R. § 1005.33 ("Procedures for resolving errors"); Official Interpretation of Regulation E, 11(b)(1) ("Notice of Error From Sender").

57. If the financial institution determines after its investigation that no error has occurred, it must provide an explanation and inform the consumer of certain rights.

58. Specifically, 15 U.S.C. § 1693f states:

(d) Absence of error; finding; explanation

If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

59. Here, Defendants violated these provisions by requiring far more information as a condition of opening, investigating and/or favorably resolving account holder's disputes than the very limited information required by Section 1693f, and by failing to provide the consumer with a meaningful explanation and the required disclosure of the consumer's right to documents.

60. Even when a consumer, like Plaintiff, provides the requested information, the dispute is summarily rejected without the explanation and disclosure of the right to investigatory materials required under Section 1693f(d).

COMPLAINT - 8

61. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

62. Specifically, pursuant to Section 1693g(b), it is Defendant's burden to prove that the disputed transfer was authorized:

> (b) BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) were in fact made in accordance with such section.

63. Defendants violated the EFTA by unlawfully imposing upon Plaintiff the burden of proof.

64. However, Defendants are explicit in their reversal of that burden, having denied Plaintiff's claim on grounds "we do not have enough evidence to file an 'unauthorized activity' claim on your behalf."

65. An accountholder's rights under the EFTA are non-waivable. Section 1693l ("Waiver of rights") states, in relevant part: "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

66. Defendants' acts and omissions set forth above constitute violations of the EFTA.

67. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff is entitled to an award of statutory damages, actual damages, including damages for emotional distress, and attorney's fees and costs.

68. Defendants' routine refusal to accept, open, investigate or resolve disputes in the consumer's favor, failure to acknowledge and honor the Fraud Exception, and their imposition of

the burden of proof on the consumer contrary to statute constitute a failure to investigate in good faith and a failure to establish a reasonable basis for believing that the consumers' accounts were not in error, and also constitutes a knowing and willful conclusion that the accounts in question were not in error when such conclusion could not reasonably have been drawn from the available evidence. These practices thus constitute a violation of 1693f(e), entitling Plaintiff to treble damages.

## VI.   SECOND CLAIM FOR RELIEF
**(Unlawful Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.)**

69. Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporate them with the same force and effect as if set forth specifically herein.

70. California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*.

71. Defendant Block, Inc. is headquartered in California and all or a substantial part of the misconduct at issue occurred in California and/or emanated from California.

72. Defendants' business practices fail to comply with the requirements of the EFTA and Regulation E and are therefore unlawful under the UCL.

73. The EFTA places sharp limitations on consumer liability for unauthorized transactions. *See* 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of consumer for unauthorized transfers").

74. The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a prepaid debit card. 12 C.F.R. § 205.6(b)(1).

75. The EFTA places sharp restrictions on what information can be required of a consumer as a condition of opening, investigating, or favorably resolving a claim, 15 U.S.C. § 1693f

76. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

77. In addition, the EFTA requires that denials include a meaningful explanation of the reason for the denial and a disclosure of the consumer's rights to documents. 15 U.S.C. § 1693f(d)

78. As set forth above, Defendants failed to comply with these and other requirements of the EFTA and Regulation E.

79. Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of or through the use of these unlawful acts or practices.

80. Plaintiff is entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unlawful business practices.

81. In addition, Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

### VII. THIRD CLAIM FOR RELIEF
**(Unfair Business Practices in Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200)**

82. Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporate them with the same force and effect as if set forth specifically herein.

83. Defendants' acts or practices, including failure to properly investigate accountholder's disputes, placement of the onus on cardholder to prove that transactions are fraudulent, and failure to promptly credit cardholder's accounts for fraudulent transactions despite both legal obligations and promises to do so, are unfair.

84. Plaintiff lost money as a result of Defendants' unfair violations of the UCL, specifically the amounts they were entitled to be reimbursed for fraudulent transactions but did not receive.

85. Under the UCL, Plaintiff may enjoin these acts and practices and obtain restitution of all funds retained by Defendants by reason of and through the use of these unlawful acts and practices.

86. Plaintiff is entitled to declaratory and injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, Defendants retained by means of such unfair business practices.

87. Plaintiff may recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment in his favor and damages against Defendants:

A. An award of actual damages, including damages for emotional distress, treble damages, statutory damages, punitive damages, and nominal damages;

B. An order of restitution;

C. Prejudgment interest;

D. Attorney's fees, costs, and expenses;

E. An order finding and declaring that Defendant's acts and practices as challenged herein are unlawful, unfair, and fraudulent;

F. Injunctive relief precluding Defendants from continuing to engage in the acts or practices described throughout this Complaint; and

G. Such other and further relief as may be necessary, just, and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 18th day of May, 2023.

    TERRELL MARSHALL LAW GROUP PLLC

    By: */s/ Beth E. Terrell*, CSB #178181
        Beth E. Terrell, CSB #178181
        Email: bterrell@terrellmarshall.com
        Erika L. Nusser, *Pro Hac Vice Forthcoming*
        Email: enusser@terrellmarshall.com
        936 North 34th Street, Suite 300
        Seattle, Washington 98103
        Telephone: (206) 816-6603
        Facsimile: (206) 319-5450

    BERGER MONTAGUE PC

    By: /s/ Julie Pollock, CSB #346081
        Julie Pollock, CSB #346081
        Email: jpollock@bm.net
        505 Montgomery Street Suite 625
        San Francisco, California 94111
        Telephone: (800) 424-6690

        E. Michelle Drake, *Pro Hac Vice Forthcoming*
        Email: emdrake@bm.net
        BERGER MONTAGUE PC
        1229 Tyler Street NE, Suite 205
        Minneapolis, MN 55413
        Telephone: (612) 594-5999
        Facsimile: (612) 584-4470

        Daniel A. Schlanger, *Pro Hac Vice Forthcoming*
        Email: dschlanger@consumerprotection.net
        Evan S. Rothfarb, *Pro Hac Vice Forthcoming*
        Email: erothfarb@consumerprotection.net
        SCHLANGER LAW GROUP, LLP
        80 Broad Street, Suite 1301
        New York, NY 10004
        Telephone: (212) 500-6114
        Facsimile: (646) 612-7996

    *Attorneys for Plaintiff*

**ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), the undersigned attests that each of the other Signatories have concurred in the filing of the document.

> By: */s/ Beth E. Terrell*, CSB #178181
> Beth E. Terrell, CSB #178181
> Email: bterrell@terrellmarshall.com
> 936 North 34th Street, Suite 300
> Seattle, Washington 98103
> Telephone: (206) 816-6603
> Facsimile: (206) 319-5450